## No. 13,408.

### The City of New Orleans vs. Nels A. Collins.

### Syllabus.

1.  A demurrer attacking the constitutionality of an ordinance as a whole, is properly overruled where any part of the ordinance is constitutional.
2.  The ordinance of the city of New Orleans making it unlawful for any person to engage in the operation of a slot machine, either as keeper, or owner, or player thereof, where the prize or reward given or to be given is money, merchandise, or checks redeemable in money, or an order to any third person for money or merchandise, and punishing the violator of the ordinance by fine or imprisonment, or both, is not in excess of the powers delegated to the city of New Orleans by the General Assembly, nor is it inconsistent with or repugnant to the fourth section of Act No. 57 of 1898.
3.  The fourth section of Act 57 of 1898, does not authorize or legalize the operation of such machines in any manner or form, or for any purpose.
    It leaves the question of the legality of the operation of such machines where the prizes are stock in trade in licensed establishments to be tested and determined by the courts.
4.  If the subject matter of an ordinance falls within the scope of the powers delegated to the municipality, it is not necessary to give validity to the exercise of the power by the city, that the State itself should have acted upon the identical matter which is covered by the ordinance.
5.  If the general powers delegated to a city cover several distinct subjects, an ordinance legally referable to any one of them for its source will stand.
6.  An authority to the city to imprison certain designated classes of persons, carries with it a delegated power to pass the necessary prohibitory and penal ordinances on the subject matter, for the violation of which the imprisonment is to follow.
7.  The use of a slot machine, where an element of chance determines whether the prizes are to be given, brings such operation under the definition of a lottery, whether the prizes given are stock in trade of licensed establishments or not.

The ordinance attacked is legal.

APPEAL from the First Recorder's Court, City of New Orleans—
Finnegan, J.

*James J. McLoughlin*, Assistant City Attorney, and *Samuel L. Gilmore*, City Attorney, for Plaintiff, Appellee.

*E. Howard McCaleb* and *Arthur B. Leopold* for Defendant, Appellant.

## STATEMENT OF THE CASE.

The opinion of the court was delivered by

NICHOLLS, C. J. Defendant is appellant from a judgment condemning him to pay a fine of twenty-five dollars or be imprisoned twenty-five days, in the Parish Prison, on a complaint that he had violated Ordinance No. 15,829, C. S., relative to slot machines.

The affidavit upon which the judgment was based averred that on the 4th day of January, 1900, at about 1:45 o'clock p. m., on Gravier street, between ——————— and Baronne streets in this district and city, one Nels A. Collins, did then and there violate Ordinance 15,829 relative to operating a slot machine at his place of business, corner of Gravier and Baronne.

All against the peace and dignity of the city of New Orleans.

The ordinance referred to is as follows:

"Be it ordained by the City Council of the city of New Orleans, that, from and after the promulgation of this ordinance, it shall be unlawful for any person, persons, or firm, to engage in the operation of any slot machine either as keeper or owner or player thereof, or any other instrument or device where the prize or reward given or to be given is money, merchandise, or checks redeemable in money, or an order to any third person for money or merchandize.

"Be it further ordained, that whosoever shall violate any of the provisions of this ordinance shall upon conviction before the Recorder in whose jurisdiction the offense is committed, be fined in the sum not less than $5.00 nor more than $25.00, and in default of payment of said fine shall suffer imprisonment for not more than thirty days or shall suffer both fine and imprisonment at the discretion of the Recorder".

Defendant filed the following demurrer to the complaint:

"1. That Ordinance No. 15,829, C. S., adopted by the city of New Orleans, which appearer is charged with having violated, is illegal, unreasonable, oppressive, null and void.

"2. That the Act of the General Assembly of the State of Louisiana, No. 45 of 1896, known as the New City Charter, did not authorize the Common Council of the city of New Orleans to enact the said Ordinance No. 15,829, C. S., which this appearer is charged to have violated, and said ordinance is therefore illegal and in excess of the powers conferred upon the said Council by the General Assembly of the State of Louisiana.

"3. That said ordinance, No. 15,829, C. S., is inconsistent with and violative of Act No. 57 approved July 8th, 1898, of the Acts of the General Assembly of the State of Louisiana, entitled—'An Act to prohibit gambling with slot machines for money prizes and to prohibit minors from playing same for either stock or money, and providing penalties therefor', and said ordinance is inconsistent with and violative of the policy of the State of Louisiana as enunciated and declared in said act.

"4. That said ordinance, No. 15,829, C. S., is repugnant to Section 4 of Act No. 57, approved July 8, 1898, a general law of the State of Louisiana, and is therefore *ipso facto* void.

"5. That by Section 4 of said Act No. 57 of 1898, the use of slot machines where prizes are stock in trade in regular licensed establishments and under the restrictions as to minors imposed by the said statute, is not prohibited, but on the contrary is specially permitted and authorized.

"6. That the said ordinance of the city of New Orleans, No. 15,-829, C. S., makes the use of said slot machines where prizes are stock in trade in regular licensed establishments penal, and inflicts a punishment for the use thereof in the manner and form permitted by the aforesaid statute of the State of Louisiana.

"7. That the city of New Orleans, the creature of the State of Louisiana, is without right, power or authority to impose a penalty or inflict punishment for an act authorized by the law of the State of Louisiana, its creator.

"8. That by the enactment of said ordinance, No. 15,829, C. S., the city of New Orleans attempts to repeal a general statute of the State of Louisiana, in full force and effect at the time of the adoption of said illegal ordinance. That the city of New Orleans through its Common Council can not disregard or set aside by ordinance a valid subsisting law of the State.

"9. That the city of New Orleans is without power under its charter to pass the said Ordinance No. 15,829, C. S., repealing and nullifying a statute passed by the General Assembly of the State, Act No. 57 of 1898, and said ordinance is therefore *ultra vires* and void.

"10. That said ordinance violates the Constitution of the United States, especially the 14th amendment thereof, in that it denies to this defendant and accused the equal protection of the laws by prohibiting the use of slot machines where the prizes are stock in trade, in regular

licensed establishments and under the restrictions contained in Act No. 57, approved July 8th, 1898, in the city of New Orleans, and making said use a penal offense, whereas said machines may be used with impunity in regular licensed establishments where the prizes are stock in trade in other parishes and cities of this State. That the discrimination, inequality and ununiformity thus made against those residing and carrying on business in the city of New Orleans, violates the provisions of the Constitution of the United States and of this State."

The demurrer having been overruled, the Recorder after hearing evidence in the case rendered the judgment from which defendant appealed.

Act No. 57 of 1898, to which reference is made in the pleadings, is an Act entitled—"An Act to prohibit gambling with slot machines for money prizes and to prohibit minors from playing same for either stock or money, and providing penalties therefor."

By its first section it was enacted:

"That whoever shall engage in gambling in slot machines with money or representatives of money, where the prize or return is to be money, or representatives of money or checks which are to be redeemed for money, shall upon conviction thereof, be fined in the sum of not less than $25.00 nor more than $200.00, or be imprisoned for not less than thirty days, nor more than ninety days, or both, at the discretion of the Court.

"Sec. 2. Be it further enacted, etc., That any owner, lessee, tenant, or proprietor of any premises or building, who shall have or permit in or about same, or connected therewith, any slot machine operated in violation of Section 1 of this Act, shall be, upon conviction thereof, fined not less than $25.00, or more than $200.00, or be imprisoned for not less than thirty days, nor more than ninety days, or both, at the discretion of the court.

"Sec. 3. Be it further enacted, etc., That any owner or proprietor of any slot machine or persons operating same, who shall permit any minor to play same either for money or stock or merchandise, shall be guilty of a misdemeanor and shall upon conviction thereof, be fined not less than twenty-five dollars nor more than one hundred, or suffer imprisonment not less than thirty days nor more than ninety days.

"Sec. 4. Be it further enacted, etc., That nothing in this Act shall be construed as prohibiting the use of said machines, where the prizes

are stock in trade, in regular licensed establishments and under the foregoing restrictions as to minors".

It will be seen that defendant's exception or demurrer is directed exclusively against the ordinance which he is charged with having violated, and that no objection is made either to the affidavit embodying the charge or to the proceedings in the Recorder's Court, and that the demurrer is levelled not at a part of the ordinance but at the whole of it.

If any portion of the ordinance is legal and constitutional, the attack made against it as a whole must fail. (People's State Bank vs. St. Landry State Bank, 50 Annual, 528.)

As the General Assembly by Act No. 57 of 1898, prohibited gambling with slot machines for money prizes, and constituted such an act a misdemeanor, it can not be successfully claimed that to the extent at least that the ordinance attacked prohibits the very same act, it is illegal or beyond the powers delegated to the city of New Orleans.

In State vs. Fourcade, 45 Annual, 718, this court held that the Legislature might delegate to municipal corporations power to adopt and enforce ordinances on matters of special local importance, though general statutes exist relating to the same subject. That the same act might constitute a crime against the public law of the State, and also a petty offense against a municipal regulation.

We do not understand appellant to contest the correctness of that proposition and therefore, in so far as he may have been guilty of gambling with a slot machine for a money prize, that he could not have been legally fined and in default of payment, imprisoned under the city's ordinances.

The affidavit on which the proceedings in the Recorder's Court were grounded, is exceedingly objectionable, as we stated affidavits of a similar kind to be in City vs. Kientz, recently decided, 52 Ann., p. —, for we are forced to look to the evidence instead of to the complaint to see what particular branch of the ordinance the accused is charged with having violated.

The evidence shows that the defendant is engaged in the cigar business at the corner of Baronne street and Gravier street, in New Orleans, having a license to carry on that business. He had one of these slot machines which was there operated with his consent and on his account.

Being on the stand as a witness, he was asked by his counsel, "What prizes do you give for the use of those slot machines?" His answer was, cigars, part of his stock in trade.

Counsel of the defendant in their brief say: "Our contention is, that the State of Louisiana having specially authorized and permitted the use of slot machines in regular licensed establishments, for stock in trade, the city of New Orleans was without power to enact the ordinance under discussion, for by the very terms of the ordinance, an offense or misdemeanor is created, and the city can not denominate a certain act as a misdemeanor, when the State itself has never made such act criminal and indictable, but on the contrary has specially authorized and sanctioned it."

" In State vs. McNally, 48 Annual, 1450, the Supreme Court held that the State alone had the authority to create an indictable offense. The city in enacting the ordinance had no power under the legislative grant to it, to create the offense of using slot machines for disposing of stock in trade, an indictable one, and in the absence of such power, its acts are *ultra vires,* and the Recorder can not punish for infraction of an ordinance *ipso facto* null and void."

As was said in the case of State vs. Itzcovitch, 49 Annual, 370, "that part of the ordinance which makes the violation of any of its provisions a misdemeanor, is illegal, in that it makes or creates an act a crime which the Legislature has not seen fit to do so.

" More than this the Legislature by statute, in clear unambiguous terms, encourages the very act which the city is now trying to prohibit and punish. This court has held in State vs. Von Sachs, 45 Annual, 1417, that the City Council can exercise only such power as legislative authority confers upon it. 'It can prohibit no business authorized by the Legislature    *    *    *    It can not in authorizing the business to be carried on, impose obligations not authorized by the Legislature'.

" It is conceded that the business of using slot machines in connection with the selling and disposing of one's stock in trade, in regular licensed establishments, is a legitimate occupation, and if it is permitted to be conducted, it is presumed to be a legitimate occupation; otherwise the Legislature (instead of authorizing it) would have passed necessary laws to suppress it. Then if the business be a legitimate one, having the sanction of the Legislature, the adoption of the ordinance being in excess of the powers conferred upon the city, is null and void.

" It will be contended, and this in fact is the only plausible contention in favor of the enactment of the ordinance complained of, that Section 4 of Act No. 57 of 1898, is violative of the Constitution of the State, in that it permits gambling, and therefore said section is unconstitutional, of no validity whatever, and consequently the city of New Orleans has the right to disregard it by enacting the ordinance in question."

" To this we answer first, that the Legislature of the State and not the city of New Orleans is the proper interpreter of the Constitution. It is charged with the duty of enacting laws necessary to carry into effect the provisions of the Constitution. In doing so, legislative acts are not to be disregarded or questioned by the city of New Orleans or its Council, who are themselves merely creatures of the State government. The creature has no right to rise in rebellion against its creator, question its authority, disregard its mandates, or nullify its solemn expressions embodied in its legislative acts."

## OPINION.

The city of New Orleans does not call in question the constitutionality of any part of Act No. 57 of 1898, nor contest the authority of the General Assembly to broaden or restrict the extent of the powers delegated to it. It does deny that such powers were attempted to be restricted by the statute in question or that the Legislature attempted therein to authorize and permit gambling by slot machines, whatever might be the manner or form of their use.

Arguing the question of intention, the city urges that no construction could or should be placed upon the statute which would attribute to the General Assembly the purpose of justifying or permitting gambling, thereby violating the Constitution of the State, that some other interpretation must necessarily be placed upon the language which it has used.

Article 188 of the Constitution declares gambling to be a vice and orders the Legislature to pass laws to suppress it, and Article 178 prohibits lotteries or the sale of lottery tickets in the State. If a slot machine used as it has been charged to have been used by the defendant, was in point of fact and law either gambling or a lottery, we are driven by force of the cituation from the idea that the General Assembly intended to give it its sanction, either directly or indirectly.

We would be no more justified in attributing such an intention to the Legislature in enacting the fourth section of Act No. 57 of 1898,

than we would have been in adopting that attempted to be ascribed to it, in enacting the proviso contained in the statute which was before this court in State vs. Olympic Club, 46 Annual, 935, and 47 Annual, 1098.

Any construction of the statute or any portion of it which would lead up to and carry with it, as the result of the construction the justifying or legalizing of any form of lotteries, or of any kind of gambling, would convert a prohibitory, preventive, and repressive statute actually into a permissive one. This court is not warranted in placing the Legislature in any such attitude.

The maxim *affirmatio unius est exclusio alterius* can not be extended so as to reach any such result. (State vs. Connor, 7 Annual, 379.)

We construe the fourth section of Act No. 57 of 1898 to mean nothing more than that where in the use of slot machines in regularly licensed establishments, the prizes given are part of the stock in trade, it should be left to the courts to determine the question, whether such use would subject the parties so using it to the pains and penalties of the general statutes, prohibiting gambling and lotteries.

We find nothing in the fourth section of Act No. 57 of 1898 which would have the effect of making the city ordinance illegal, as being inconsistent with or contradictory to any statute of the State. The statute did not have the effect of withdrawing from the various municipalities of the State any of the powers delegated to them, prior to the passage of the same.

It was not dealing with that subject at all. If the ordinance be illegal or unwarranted, its illegality must be sought for from some cause outside of the Act of 1898.

We turn now to an examination of the question whether the Common Council had authority to pass the ordinance whereof the legality is in dispute.

If the subject matter of the ordinance was one falling within the scope of the powers delegated to the municipality, it was not necessary to give validity to the exercise of the power by the city, that the State itself should have acted upon the same identical matter which is covered by the ordinance.    13 Annual, 57.

In McLain's Criminal Law, Section 63, it is said that "an ordinance to regulate matters which are within the general powers of the city, is not invalid because such matters are also regulated in a different way

by statute, if there is no necessary repugnance between the statute and the ordinance.

"Thus the city may be authorized to regulate as a nuisance, things which would not be nuisances under the State statute, although statutory punishment for nuisances is provided for, and may for instance regulate and prohibit the sale of liquors, although its action goes beyond the regulations made by general statute."

"An ordinance providing a punishment for what is also punishable under State statute, is not therefore necessarily void, and in Section 66 it is said that "the power granted to municipalities usually involves the authority to determine what are nuisances in a city, and to suppress them even though the matters referred to may not be nuisances under the State law, and they may make municipal regulations for the suppression of nuisances, which are also within State control."

But the city can not under the power to suppress nuisances, make that a nuisance which is not such, in fact. The general power given to cities is broad enough to authorize the prohibition of the sale of lottery tickets, or the sale of adulterated milk, or the operation of a carpet-beating machine, near a residence.    (State vs. Dobard, 45 Annual, 1412.)"

In Swigert vs. P., 154 Illinois, 284, it was held that an act (pool selling) falling within the general statutes as to gaming, might be punishable thereunder, although not covered by special statute.

If the general powers delegated to a city, cover several distinct subjects, an ordinance legally referable for its source to any one of them will stand.   It is immaterial whether the authority of the city for the passage of this particular ordinance rests upon its general police powers, its power to suppress nuisances, its power to suppress gambling, or to suppress lotteries, if it, (the city's action) stood justified under any one of these powers.

In Section 64 of McLain's Criminal Law, it is said that "the power given to a city to suppress and prohibit a class of acts implies a power to inflict punishment therefor".

A power to imprison men for pursuing certain occupations, or doing certain acts, carries with it a delegated power to pass the necessary prohibitory penal ordinances on the subject matter, for the violation of which the imprisonment is to follow; thus the 12th clause of Section 15 of Act No. 45 of 1896 (the last charter of the city of New Orleans), delegating to that city the power "to close all gambling houses

and to expel from the city and to imprison all buncoe men, lottery men, common cheats, and swindlers, beggars, and dangerous and suspicious characters", was a recognition by the General Assembly, that the good order and welfare of the city would call for and require municipal action against such houses and persons, and was a delegation to the city authorities to deal with these subject matters.

A lottery has been defined to be "a scheme for the distribution of property by chance or lot, among persons who have paid or agreed to pay a valuable consideration for the privilege of participating in such scheme". The crime of conducting a lottery is similar to that of gaming, and in fact a lottery is a species of gaming. The evil which the law is designed to remedy is much the same, as in gaming, being the excitement of an inordinate desire for gain, leading to an arousing of the baser passions and tending to mendicancy and idleness.

In applying the law the courts have taken this as the evil to be remedied and uncertain, or doubtful terms, have been construed with this object in view * * *. As a rule lottery schemes have no distinct names, as have many of the well-known games, but some schemes or devices having distinct names have been held to be lotteries, such as playing policy, raffles, pools, as on horse races, gift enterprises, and any scheme for the sale of goods or merchandize whereby a prize is given to some buyer, to be determined by lot or chance.

These schemes are so various that it is difficult to cover them even by a general description, but in most of them the chance to secure something of value by lot, usually evidenced by a ticket, is given as an additional inducement to the purchase of goods of a particular description or of a specified value.

There can be no doubt that "the effect of lotteries upon public morals is such as to cause them to come within the power of police regulations of the States" and (we may add) of police regulation of the municipal corporations of the State under delegated police powers. (McLain's Criminal Law, Sections 1315-1317.)

An examination of the evidence in this case satisfies us that the slot machine and its use as shown in this case to have been made by the defendant, brings the same within the definition of a lottery, and defendant as a "lottery man", under the views expressed by us in State vs. Boneil, 42 Annual, to which we adhere.

There was an element of chance in the operation of the machine which brought defendant within the grasp of the law and the ordi-

State ex rel. Rice vs. Judge.

nance. Entertaining this view, we need not examine to see whether the action of the Council, in passing the ordinance, would have been warranted under its general police powers of preserving the good order, morals, and welfare of the city; of abating and suppressing nuisances, gambling, gambling games, and gambling houses.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be and the same is hereby affirmed.