## No. 14,111.

STATE OF LOUISIANA EX REL. G. W. WYNNE VS. J. B. LEE, JUDGE.

### SYLLABUS.

1. A court vested with original jurisdiction *ratione materiae* and *ratione personae* is competent to pass upon the constitutionality of a statute under which a criminal prosecution is conducted before it, and its judgment therein is authoritative and conclusive so long as it remains the judgment of the highest court vested with such jurisdiction.

2. There is no inflexible rule with respect to the stage of the proceedings in the inferior court at which the application for the writ of prohibition must be made, and this court will liberally use its discretion in the use of that writ, according to the circumstances of each case, where there is something yet to be done in excess of the jurisdiction conferred upon such inferior court.

3. It is not too late to apply for such relief, where there is no remedy by appeal, upon an averment of want of jurisdiction, based upon the alleged unconstitutionality of the statute under which the applicant has been convicted and sentenced, if such application be made before the sentence has been executed.

4. The title of Act No. 49 of 1894 expresses but one object, and Section 12 of said act does not go beyond the title, by denouncing the mere selling of drugs and nostrums, etc., as an offense, the offense there denounced consisting of the itinerant vendors professing to treat and cure disease and deformity by the use of the drugs, nostrums, etc., sold by him, and by the other means mentioned.

APPLICATION for writs of *Certiorari* and Prohibition.

---

*Goss & Sutherlin* and *W. C. Pegues,* for Relator.

---

*Walter Guion,* Attorney General, and *Amos L. Ponder,* District Attorney, (*Lewis Guion,* of Counsel), for Respondent.

STATEMENT.

The opinion of the court was delivered by

MONROE, J.   The relator having invoked the supervisory jurisdiction of this court, a writ of *certiorari* issued, together with a restraining order, and a rule *nisi,* directing the respondent to show cause why he should not be prohibited from further proceeding, etc., as prayed in the petition.   By way of return to the writ of *certiorari,* the respondent has forwarded a copy of the record called for, from which his reasons for the action of which the relator complains sufficiently appear; the case being as follows, to-wit:

An information was filed, in the District Court for the Parish of De Soto, charging that the relator, "whilst acting as an itinerant vendor, did, unlawfully, sell, barter, and trade, drugs, nostrums, ointments and applications, intended for the treatment of diseases and injury, and did, then and there, profess to cure and treat disease and deformity with said drugs and nostrums, contrary to the form of the statute," etc.

The accused (relator herein) moved to quash this information, on the grounds; that Act No. 49, of 1894, under the authority of which it purports to have been filed, contravenes Articles 29, of the State Constitution of 1879, and 31 of the present Constitution, in that, it embraces more than one object and its object is not expressed in its title, and that it contravenes Articles 2 and 6 of the State Constitution, and the 14th amendment of the Constitution of the United States.   This motion having been overruled and a bill of exceptions taken, the accused waived arraignment, filed a plea of not guilty, was tried and convicted; and, having moved for a new trial, and excepted to the refusal of the court to grant the same, was sentenced to pay a fine of twenty-five dollars.   He thereupon applied for an appeal, which was granted, and made returnable to this court upon August 22, 1901. Upon August 21st, however, he moved to set aside the order for appeal and gave notice of his intention to apply to this court, and, upon August 26th, alleging that he was without remedy by appeal, he made the application which we are now considering, in which he avers that, for the reasons set forth in his motion to quash, the District Court was without jurisdiction to hear and determine said cause and should be prohibited from further proceeding therein, and he prays judgment accordingly.

## OPINION.

There can be no doubt that the court *a qua* had jurisdiction to determine whether the objections which the relator urged to the constitutionality of the statute under which he was prosecuted were well founded; and its judgment, that they were not well founded, was authoritative and conclusive so long as it continued to be the judgment of the highest court vested with such jurisdiction. If the relator, being dissatisfied, had, then, invoked the supervisory jurisdiction of this court (the case being one in which no appeal lies), and it had been here held that his objections were well founded and that the prosecution was unauthorized by any constitutional law, the District Court might have been prohibited from proceeding with the trial; or, if, after the trial and before sentence, such application had been made (with like result, as to its merits), the District Court might have been prohibited from imposing sentence. Upon the other hand, if the relator had waited until after the sentence imposed had been executed, his application to this court would have been too late, as there would, then, have been nothing to be done by, or under the authority of, the District Court, and the function of the writ of prohibition is to stay action, about to be taken, and not to annul proceedings which have been completed. State *ex rel.* R. R. Co. vs. Judges, 48 Ann. 1166; State *ex rel.* McLeod & Co. vs. Judge, 50 Ann. 109. As the matter stands, the application, whilst coming after the trial and sentence, is made before the execution of the sentence, and for the purpose of staying such execution, which, if the judgment to be executed has no other basis than an unconstitutional law, the respondent is without the legal capacity to authorize.

"There is no inflexible rule with respect to the stage of the proceedings in the inferior court at which the application for the writ 'of prohibition' must be made, and the courts have liberally used their discretion in the use of the writ, according to the circumstances of each case, where there was anything to be done in a proceeding clearly in excess of jurisdiction." Ency. Pl. & Pr., Vol. 16, p. 1133; State *ex rel.* Crozier vs. Judge, 49 Ann. 1454. We are, therefore, of opinion that the application, as made, should be considered on its merits.

Upon the main issue, counsel for relator say in their brief: "The only questions raised by the application, are, that the object of the said act is not embraced in the title thereof; that said act embraces more

than one object, and that the provisions of Section 12 of said act are beyond the range of the objects expressed in the title," etc. And they contend that there are two objects embraced in the act, to-wit: (1) To regulate the practice of medicine and to prevent the practice of medicine by unauthorized persons," which they concede to be a single object, covered by the title; and (2) "to prohibit the sale, by itinerant vendors, of drugs," etc., which they claim is a distinct object not covered by the title.

The title of Act 49 of 1894, reads: "An act to regulate the practice of medicine, surgery and midwifery; to create State Boards of Medical Examiners, and to regulate the fees and emoluments thereof; to prevent the practice of medicine, surgery and midwifery by unauthorized persons; and to provide for the trial and punishment of violators of the provisions of this act by fine or imprisonment, or both, and to repeal all laws, or parts of laws in conflict, or inconsistent, with the provisions of this act."

The following is the substance of the several sections which it seems necessary to consider:

SECTION 1. That, after the promulgation of this act, no one, except those already engaged in such practice under existing laws, shall practice medicine in this State without the qualifications required by the act.

SECTION 2. That, to entitle a person to practice medicine, he must satisfy the board of examiners created by the act that he is twenty-one years old, of good moral character, and possessed of, at least, a fair primary education, and must present a diploma from a medical college in good standing; having complied with which conditions, the board will issue him a certificate.

SECTION 12 provides "That any itinerant vendor of any drug, nostrum, ointment or application of any kind intended for the treatment of disease, or injury, or who may by writing, print or other method profess to cure or treat disease or deformity, by any drug nostrum, manipulation or other expedient, in this state, shall, if found guilty, be fined in any sum not less than twenty-five dollars and not exceeding one hundred dollars for each offense, to be recovered in an action of debt before any court of competent jurisdiction, or shall be imprisoned for a term of not less than ten days or more than thirty days, or both fined and imprisoned."

SECTION 13. That a person shall be regarded as practicing medicine

who shall append the letters M. D. or M. B. to his, or her, name or repeatedly prescribe, or direct, for the use of any person, or persons, any drug, or medicine, or other agency, for the treatment, cure, or relief of any bodily inury, infirmity, or disease, excepting farmers and planters on certain conditions.

SECTION 14. That any person practicing medicine without the cer· tificate of the board shall be guilty of a misdemeanor and, on conviction, shall be punished by fine of not less than fifty dollars, etc., or imprisonment, or both.

Act 13 of 1896 amends and re-enacts Section 14, above referred to. so that, instead of being guilty of a misdemeanor and liable to criminal prosecution, a person practicing medicine without a certificate may be enjoined by the Board of Examiners, who may recover in the same suit a penalty of $100, with attorneys' fees and costs. The question whether the title thus recited expresses the object of the act and whether the body of the act embraces any object not so expressed were presented to this court several years ago in a case in which the Board of Examiners had proceeded against a person who had assumed to practice medicine without having obtained the requisite certificate, and the jurisprudence interpreting constitutional provisions such as those here invoked was exhaustively considered, with the result which may be stated in the following language of the Chief Justice, who, as the organ of the court, decided the case, to-wit: "The act in ques·· tion has but one single object, the protection of the public from the practicing of medicine in its different branches by unskilled and incompetent persons. The various sections of the act have all direct relation to the enforcement of the purpose announced by the act." (Title): Board vs. Fowler, 51 Ann., 1358

It is true that the defendant in the case thus cited was not an itinerant vendor, prescribing and professing to effect cures with the nostrums which he was engaged in selling, but was a person who assumed, and may have been entitled to assume, the character and dignity of a medical practitioner, but had not complied with the con-. ditions required by the statute to entitle him to practice in this state. It can hardly be denied, however, that, if the general purpose of the act is to protect the public from unskilled and incompetent practitioners, provisions relating to vendors who undertake to prescribe and effect cures with the nostrums which they sell is quite as germane to the purpose as the provisions which relate to persons who, without hav-

ing had their qualifications tested, undertake to treat disease by the use of compounds sold by others.

But the learned counsel for the relator call attention to the decision in the case of State *ex rel.* Dist. Atty. vs. Judge, 105 La., 371, and claim that it was there held that the itinerant vendor referred to in Section 12 of the Act of 1894 is not to be considered a medical practitioner, but, for all the purposes of the act, is to be regarded, solely, as a vendor of drugs and nostrums, and they claim, as we understand them, that, conceding that the purpose of the act is to regulate the practice of medicine and to prevent unskilled and incompetent persons from engaging in such practice, that purpose does not include within its scope the mere selling of drugs and nostrums, and hence that Section 12, by reason of the construction so placed on it, must be considered as eliminated from the act. The conclusion as thus stated is authorized by the premise which the counsel have assumed, since an act to regulate the practice of medicine could not, in view of the constitutional inhibition relied on, fairly include within its scope provisions regulating the mere sale of medicines, or nostrums, or any other articles of commerce; otherwise it might be extended to retail and wholesale dealers as well as to itinerant vendors.

But, for the establishment of their premise, the counsel have given to the opinion and decree referred to a broader interpretation than we are prepared to accept. A careful consideration of Section 12 of the Act of 1894 leads, as we think, to the conclusion that it was not intended to apply to the itinerant vendor, merely in his capacity of vendor, but that the lawmaker was undertaking to deal with him for the purposes of the act, as a person professing to treat or cure disease or deformity by the the use of drugs and nostrums which he sells, or by manipulation or other expedients. It is true that the section is inartificially drawn, but, as drawn, it cannot be interpreted as defining and denouncing two offenses, the one of selling and the other of professing to cure with drugs and nostrums. Thus, the language reads: "That any itinerant vendor of any drug, nostrum or application of any kind intended for the treatmet of disease or injury, or who may, by writing, print or other methods, profess to cure or treat disease or deformity by any drug, nostrum, manipulation or other expedient," in this state, shall, if found guilty, be fined, etc.

It is obvious that this sentence is rendered grammatically unintelligible by the introduction of the disjunctive "or" after the word "in-

jury," thereby dislocating the adjective or descriptive clause, modifying the subject, "itinerant vendor," and disconnecting it from its predicate, "shall be fined." We have, then, either to hold that the section means nothing, or else to ignore the offending word as not written, leaving the sentence to read, "That any itinerant vendor of any drug * * * who may by writing * * * profess to cure or treat dissease * * * by any drug * * * shall * * * be fined," etc. And there is abundant authority for the adoption of the latter alternative: C. C., 18; Hennen's Digest, Vol. 1, pp. 783-784.

In the case upon which counsel rely (State *ex rel.* Dist. Atty. vs. Judge, 105 La., 371), the question presented was whether Section 12 of the Act of 1894 was repealed by Act No. 13 of 1896, and it was held that there was no repeal. But it was not held that the itinerant vendor was dealt with in Section 12 merely as a vendor.

The language of the opinion was, in part, as follows, to-wit: "Act No. 13 of 1896 says not a word about amending or repealing Section 12 of Act 49, and the repeal of Section 12 must result, if at all, from an inconsistency between it and the new sections, 14 and 19, inserted by Act 13." (Sections 12 and 14, the latter as it originally stood in Act 49 and as amended are then recited at length, and the opinion proceeds): "The two sections, 12 and 14, as they originally stood in Act 49, were not inconsistent. The one section provides for the case of itinerant vendors of drugs, etc., and seems to put their business, unconditionally, and for good and all, under ban, whilst the other section provides for the case of practitioners of medicine, permitting them to be licensed. Each section makes separate and different provisions for the case it separately deals with. The two sections were not inconsistent as they originally stood in Act 49 and are not rendered more so by the amendment of Section 14. The section after amendment is identical with what it was before amendment, except that the process it provides for is changed from criminal to civil. It continues to deal with a case different and separate from that dealt with by Section 12, and continues to be perfectly consistent with Section 12." It will be remembered that this language followed the recital, in full, of the sections referred to, and the words, "The one section provides for the case of itinerant vendors," etc., were used merely to indicate a section, the entire text of which had already been given, so that the character, "*etc.*," may be considered as standing for so much of the section as is not again expressed in words, and which proceeds to

describe the subject of the sentence as not merely a vendor, but a vendor "who may profess to cure or treat disease, by any drug, nostrum, etc." It is true that Section 13 of the Act of 1894 reads, "That any person shall be regarded as practicing medicine, in any of its departments, within the meaning of this act, who shall append the letters M. D. or M. B. to his or her name or repeatedly prescribe or direct for the use of any person or persons any drug or medicine or other agency for the treatment, cure, or relief of any bodily injury, infirmity or disease. This act shall not apply to farmers or planters when exclusively practicing, without compensation, on their employes and tenants." And it is also true that the Act of 1896 so amends the following section (14) of the Act of 1894 as to provide a civil, instead of a criminal remedy in cases of persons practicing medicine in violation of the provisions of the act, whilst Section 12 of the Act of 1894, which provides a remedy by criminal proceedings in the case of the itinerant vendor who may profess, etc., is left untouched. But, as was said in the opinion to which we have just referred, the itinerant vendor professing to treat and to cure disease or deformity is placed in a class by himself. He is not regarded as a practitioner of medicine in the sense of being a person who, by appending the letters M. D. or M. B. to his name, assumes that character. And yet, by undertaking to treat disease, being presumably unskilled and incompetent, he is within the scope and purpose of the act, and is a person against whom there is greater need that the public should be protected than one whose only disqualification is the lack of the certificate of the Board of Medical Examiners.

Confining ourselves to the questions, which from the excerpts from the brief of the relator's counsel heretofore given we understand to have been the only questions relied on in the District Court, and which are specified as the only questions urged here, we are of opinion that the application for the writ of prohibition should be denied. And it is so ordered.