(67 South. 35)

No. 20930.

CITY OF SHREVEPORT v. KAHN.

In re KAHN.

(Nov. 30, 1914.    Rehearing Denied Jan. 11, 1915.)

*(Syllabus by the Court.)*

1. LOTTERIES ⊗⇒2 — VALIDITY OF STATUTE — "LOTTERY."

Act No. 169 of 1894 sufficiently defines the offense of conducting a lottery, and is not invalid because it does not define the word "lottery." This term has no technical meaning in the law distinct from its popular signification (quoting Words and Phrases, Lottery).

[Ed. Note.—For other cases, see Lotteries, Cent. Dig. § 2; Dec. Dig. ⊗⇒2.]

2. LOTTERIES ⊗⇒3 — PUNCH BOARD — GAMBLING DEVICE—"LOTTERY."

A "lottery" is a scheme for the distribution of prizes by chance. *Held*, that the gambling device commonly called a "punch board" is a lottery (citing Words and Phrases, Lottery).

[Ed. Note.—For other cases, see Lotteries, Cent. Dig. § 3; Dec. Dig. ⊗⇒3.]

3. LOTTERIES ⊗⇒2 — VALIDITY OF STATUTE — GRADING OFFENSES.

*Held*, that section 12 of Act No. 107 of 1902, grading the offense of conducting a lottery business and fixing the minimum and maximum penalties therefor, is in accord with the direction to the General Assembly contained in article 155 of the Constitution of 1898.

[Ed. Note.—For other cases, see Lotteries, Cent. Dig. § 2; Dec. Dig. ⊗⇒2.]

4. STATUTES ⊗⇒118 — TITLE AND SUBJECT-MATTER—LOTTERIES.

*Held*, that Act No. 280 of 1914, amending and re-enacting section 12 of Act No. 107 of 1902, has not two distinct objects, and therefore does not violate article 31 of the Constitution.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 158–160; Dec. Dig. ⊗⇒118.]

Rafe Kahn was convicted of violating a city ordinance, his conviction was affirmed by the district court, and he applies for writs of certiorari and prohibition. Writ recalled, and application dismissed.

Looney & Wilkinson, of Shreveport, for applicant. W. A. Mabry, Dist. Atty., and Scheen & Blanchard, all of Shreveport, for respondent.

LAND, J. The relator was charged in the city court of the city of Shreveport on affidavit, as follows:

"Did unlawfully sell or otherwise dispose of and offer to sell or otherwise dispose of and have in his possession with intent to sell or otherwise dispose of lottery tickets, lottery policy, or combination or device or other writing, token or certificate, or token, pretending or intending to entitle the holder or bearer to a premium or prize drawn or to be drawn."

The bill of particulars reads as follows:

"The device, lottery tickets, policy, or token certificate entitling the holder to a premium or prize being a certain board perforated with holes, which holes are covered with paper, and in each hole is deposited a number or ticket, there being 600 holes containing said numbers, or tickets upon said board, and in addition thereto on said board are 12 prizes, being gold finished pencils, of the value of $2.50 each, and on said board opposite each of said prizes is a number corresponding with some concealed number in the holes aforesaid; and any person by paying five cents to punch in any hole selected by him secures the number or ticket in such hole, and, if the ticket or number there drawn by him from said hole should correspond with the number on said board set opposite said prize or gold finish pencil, he gets the pencil free without further costs, and, if his said number does not so correspond, he in that event gets a package of chewing gum which retails for five cents."

The prosecution was instituted under Act No. 280 of 1914, to amend and re-enact section 12 of Act No. 107 of 1902, entitled an act to grade misdemeanors, etc., which said section graded the offense of conducting a

lottery business, except in those cases provided for in section 1 of Act 169 of 1894. Section 1 of said act provides a penalty for establishing or conducting a lottery in this state, and section 2 provides a penalty for selling, or otherwise disposing of, any lottery ticket, policy, combination, device, writing, certificate, or token purporting or intended to entitle the holder, bearer, or any other person, to any prize or premium, or share or interest therein, drawn or to be drawn, etc.

The defendant moved to quash the affidavit and charge on the following grounds:

(1) That the affidavit does not state the facts on which the charges are based.

(2) That the affidavit and bill of particulars "does not show any crime known to the laws of Louisiana."

(3) That if said prosecution is based on section 12, Act 107 of 1902, then said section is unconstitutional, in that the title thereof purports to grade misdemeanors, and that there are no graduations in so far as the offense relative to lotteries is concerned, and moreover is unconstitutional for the reason that it is an attempt to amend Act 169 of 1894, which in itself is unconstitutional.

(4) That if the prosecution is based on Act 280 of 1914, then the same is unconstitutional because the matter attached thereto is not cognate to section 12 of Act 107 of 1902, is upon an entirely different subject-matter, and is not covered by the title as required by article 31 of the Constitutions of 1898 and 1913.

(5) That if the prosecution is based on Act 169 of 1894, then the same is unconstitutional, because it provides two punishments for the same offense, does not define the crimes to be denounced, and that the acts here charged are not covered by the title of said act; that said act violates articles 15 and 16 of the Constitution of 1879, articles 16 and 17 of the Constitutions of 1898 and 1913, in that it does not define the crimes sought to be punished, and places the court in a position to be required to perform legislative functions, and that for the same reason section 12 of Act 107 of 1902 and Act 280 of 1914 are unconstitutional.

In a supplemental motion to quash, the defendant pleaded that Act No. 169 of 1894 is unconstitutional because its title embraces more than one object, and denounces or attempts to denounce more than three separate and distinct offenses in violation of article 29 of the Constitution of 1879, and article 31 of the Constitutions of 1898 and 1913; that section 12 of Act 107 of 1902 and Act No. 280 of 1914, if considered as amendments to Act 169 of 1894, is unconstitutional, because said act is unconstitutional; but, if not so considered, then section 12 of Act 107 of 1902, is not covered by the title of said act as required by article 31 of the Constitutions of 1898 and 1913, and Act 280 of 1914 is likewise unconstitutional for the further reason that it attempts to amend and re-enact an unconstitutional statute.

The judge of the city court, for written reasons assigned, overruled the motion to quash; and on the trial of the case found the defendant guilty, and sentenced him to pay a fine of $10 and costs or ten days in jail. Whereupon, the defendant took an appeal to the district court.

The district judge affirmed the judgment. Thereupon the defendant invoked the supervisory jurisdiction of this court.

It appears that the case was tried in the district court on the following statements of fact:

"The accused, Rafe Kahn, owns a cigar stand and operates with it a punch board perforated with holes, which holes are covered with paper, and in each hole is deposited a number, there being 600 holes in said board containing said numbers; that on said board there are 12 gold finished pencils of the value of $2.50 each, and opposite such pencil is a number corresponding with some concealed number in the holes aforesaid. Any person buying five cents worth of cigars, chewing gum, pencils, or other goods,

kept at the cigar stand, has the privilege of punching one of these holes and taking the number therefrom. If such number corresponds with one of the numbers opposite the gold finished pencil, the purchaser then and there receives such pencil; but, if the number does not correspond with the one opposite the pencils, the purchaser only receives the goods bought by him."

The respondent judge, in answer to the contention that under the facts the defendant violated no law of this state, says, in part, as follows:

"It is contended by the defendant that this law was only aimed at lotteries like the old State Lottery Company, which issued tickets signed by them, and which on its face entitled the holder to a chance in some prize to be drawn; but the reading of the statute very clearly shows that it was intended to and does cover any kind of ticket or token that entitles or is intended to entitle the holder to (a) premium or prize."

"It is contended further that he does not sell or have for sale the ticket bearing a number, but that he only sells the right to punch out one of the numbers from this board; but it is clearly shown, and even admitted, that, if the number of the slip of paper thus punched out corresponds with the number opposite a pencil, the purchaser gets the pencil as a prize."

"Of course, this is merely a subterfuge to try to deceive some one into believing that the ticket with the number on it is not sold. Who would want a punch at the board except to secure the number, and who would want to secure the number unless there was an opportunity to win something by having it. That is the incentive to the whole, and that is what is paid for."

The respondent judge cites State v. Boneil, 42 La. Ann. 1110, 8 South. 298, 10 L. R. A. 60, 21 Am. St. Rep. 413, and City of New Orleans v. Collins, 52 La. Ann. 973, 27 South. 532.

In the Boneil Case, a city ordinance made it unlawful for any person to sell or otherwise dispose of any lottery ticket, or token, policy, combination, device, or certificate, in any lottery drawn or to be drawn in or out of the city of New Orleans. The defendant in that case was engaged in selling "Enterprise Tea" inclosed in sealed envelopes. In addition to the tea, some of the envelopes contained a ticket naming and entitling the holder to some other article. The purchaser upon the payment of five cents was at liberty to select an envelope from any of the lot exposed on the counter; and, if the envelope contained besides the tea a ticket, the holder was entitled to the article mentioned upon it. The court, through Fenner, J., held that the scheme was undoubtedly a lottery. The court, in part, said:

"A lottery 'is a distribution of prizes and blanks by chance; a game of hazard, in which small sums are ventured for the chance of obtaining a larger value, either in money or in other articles.' Worcester's Dict.

"'A scheme for the distribution of prizes by lot or chance.' Webster's Dict.

"'Any scheme whereby one, on paying money or other valuable thing to another, becomes entitled to receive from him such a return in value or nothing, as some formula of chance may determine.' Bishop, Stat. Crim. § 952."

The court in support of its position cited a number of cases, including one of "gift sales," and several of sales of "prize candy" in packages or boxes containing other articles or coupons calling for small sums of money.

In City of New Orleans v. Collins, 52 La. Ann. 973, 27 South. 532, the court reaffirmed State v. Boneil, and held further that the use of a slot machine, where an element of chance determines whether the prizes are to be given, brings such operation within the definition of a lottery.

In the case at bar the payment of five cents for a cigar or package of gum entitled the purchaser to a ticket, which he was at liberty to select from any one of the 600 holes of the punch board, and the ticket entitled him to a chance of drawing one of the golden pencils.

We are of opinion that the scheme of the defendant for the distribution of his pencils by chance constituted a lottery, and that he sold tickets entitling the holders to participation in the drawings. The question whether the affidavit and bill of particulars charge an offense against the statutes was properly

raised in the city court by demurrer. For the purpose of this case there is no essential difference between the bill of particulars and the statement of facts on which the case was tried on appeal.

The objection of the defendant to the affidavit, accompanied as it was by the bill of particulars, was without merit.

[1, 2] Defendant's objection to Act 169 of 1894 may be briefly stated as follows:

(1) That it does not define the crime sought to be denounced.

(2) That the acts charged against relator are not expressed in the title of the act.

(3) That it embraces more than one object in its title.

Section 2, the only one which concerns the defendants, in plain language penalizes the sale or other disposition of lottery tickets, tokens, etc., intended to entitle any person to any prize or premium drawn or to be drawn, etc.

It is, however, argued by relator that Act 169 of 1894 is unconstitutional because it does not define or attempt to define "a lottery, lottery ticket, lottery token, lottery certificate, or lottery combination or another term used therein," and thereby contravenes articles 14 and 15 of the Constitution of 1879 and articles 16 and 17 of the present Constitution.

The articles mentioned appear under the head of "Distribution of Powers," and we suppose that the contention of relator is that the courts have no jurisdiction to determine the meaning of words used in laws and statutes, and that it is the exclusive function of the Legislature to define the meaning of words and terms used in the enactment. This contention is not serious. See Words and Phrases Judicially Defined, vols. 1–12; also, Civil Code, c. 4, relative to the "Application and Construction of Laws."

The term "Lottery" has been judicially defined as follows:

"The term 'lottery' has no technical meaning in the law distinct from its popular significance. A lottery is a scheme for the distribution of prizes by chance."

"The word 'lottery' as used in the statute forbidding the same is used in its ordinary and popular sense. The statute aimed to prohibit that species of gambling."

See Words and Phrases, vol. 5, p. 4245.

The further contention that Act 169 of 1894 does not define the crime there sought to be created is without merit. The act makes it unlawful to establish or to operate lotteries, or to sell lottery tickets, or tokens, etc.

In State v. Smith, 30 La. Ann. 846, the court held that section 789 of the Revised Statutes of 1870, providing that "whoever shall commit the crime of incest shall, on conviction thereof, suffer imprisonment at hard labor for life," did not denounce any crime known to the common law, or defined by state statute; and the word itself did not have any fixed and definite meaning.

In State v. Gaster, 45 La. Ann. 636, 12 South. 739, section 869 of the Revised Statutes of 1870, denouncing any civil officer guilty of "any misdemeanor in the execution of his office," was held not to define any offense, and to impose on judges the legislative duty of declaring what acts shall be misdemeanors.

In Town of Winnfield v. Grigsby, 126 La. 935, 53 South. 53, the court held that a certain paragraph of Act 136 of 1898, giving municipal corporations the power to prohibit "the desecration of the Sabbath day," was too vague and uncertain to base a criminal prosecution upon.

In State v. Comeaux, 131 La. 930, 60 South. 620, the court held that Act No. 202 of 1912, providing a penalty for committing an indecent assault, was null, because there is no law defining the crime of indecent assault.

The above cases cited by the relator have no application to the act before us, which simply makes it unlawful to set up or oper-

ate a lottery, a well-known gambling device, or to sell lottery tickets, tokens, etc.

[3, 4] The second and third grounds of objection may be considered together. The title of Act 169 of 1894 would serve as a model. It expresses the purpose "to suppress lotteries," and sets forth the means provided in each section to effectuate that object.

In State ex rel. Wynne v. Judge, 106 La. 400, 31 South. 14, the court quoted from Board v. Fowler, 50 La. Ann. 1358, 24 South. 809, as follows:

"The act in question has but one single object—the protection of the public from the consequences of the practicing of medicine in its different branches by unskilled and incompetent persons. * * * The various sections of the act have all direct relation to the enforcement of the purpose announced by the act."

Act No. 280 of 1914, amended and re-enacted section 12 of Act 107 of 1902, grading misdemeanors and minor offenses pursuant to article 155 of the Constitution of 1898; said section relating to "the offense of conducting a lottery business." The new matter in the act of 1914 is a provision making the mere possession of a lottery ticket, device, token, etc., prima facie evidence of intent to sell or unlawfully dispose of the ticket, device, etc. Relator contends that the inclusion of said rule of evidence renders the said act unconstitutional. Relator cites State v. Sugar Refining Company, 106 La. 553, 31 South. 181, holding that an act to amend certain sections of a general law is limited in its scope to the subject-matter of the sections proposed to be amended. In that case a license tax was imposed on the business of the defendant by a proviso to a section not mentioned in the title of the amendatory act. The court held the proviso unconstitutional.

It is to be noted that Act 280 of 1914 does not amend any other section of Act 107 of 1912, and on the face of the act the most that can be said is that it embraces cognate matter not strictly within the text of the title. See State v. Walters, 135 La. 1070, 66 South. 364, recently decided.

The matter being cognate, no two distinct objects or purposes are embodied in the statute. But conceding for argument's sake the unconstitutionality of Act 280 of 1914, then Act 107 of 1902 would be reinstated as the law of the land.

The contention of relator that section 12 of the latter act is unconstitutional, because it contains separate and independent legislation to the extent of creating offenses and providing for the punishment thereof, and because there is nothing in the title to indicate such a purpose, is without merit. Section 12 graded the offense of conducting a lottery business as denounced in section 2 et seq. of Act 169 of 1894, and affixed the minimum and maximum penalties therefor, as directed by article 155 of the Constitution of 1898. The title of Act 107 of 1902 is perfect.

Were this act also held to be unconstitutional, relator would fall within the grasp of Act 169 of 1894.

It is therefore ordered that the writ herein be recalled, and that relator's application be dismissed, with costs.