EASTERN DIST.
May, 1840.

SLIDELL
vs.
M'COY'S EXECU-
TORS.

---

## SLIDELL vs. M'COY'S EXECUTORS.

APPEAL FROM THE COURT OF PROBATES, FOR THE PARISH AND CITY OF NEW-ORLEANS.

Where a person buys an *interest* or share in a speculation of lands and town lots, which soon after and suddenly decrease and fall greatly in value, from causes independent of any act or fault of the seller, he cannot resist payment of his notes or obligations, on the ground of failure of consideration.

A hope or expectation of gain or profit in some enterprise or speculation, may form the object of a contract of sale.

Eastern Dist.
May, 1840.

SLIDELL
vs.
M'COY'S EXECU-
TORS.

This is an opposition of John Slidell to the tableau of distribution filed by the testamentary executors of I. L. M'Coy, deceased, demanding to be placed on said tableau as a privileged and mortgage creditor for the amount of two promissory notes of six thousand six hundred and sixty-seven dollars each, and five hundred dollars for professional services rendered. The notes were signed by M'Coy, payable to the order of E. Salzman, and by him endorsed. The evidence shows that they were given for part of C. F. Zimpel's interest in a speculation or purchase of several small tracts of land on the coast above New-Orleans, on which the towns of Dublin and Germantown were laid out. They were placed in the hands of Slidell, in pledge and as security against his endorsements for Zimpel, by his agent.

The circumstances under which M'Coy gave these notes, and the grounds on which payment is resisted are so fully set forth in the opinion of this court, that it is needless to recapitulate them.

The judge of probates allowed the claim and ordered the tableau to be amended, by placing the plaintiff and opponent thereon as an ordinary creditor, for the amount of his claim. The heirs of M'Coy appealed.

*Eustis*, for the plaintiff in opposition, insisted, that there was no failure of consideration, even as between the original parties, but if there was, Slidell was not privy to the contract. He was the *bona fide* holder of the notes, negotiable in their form, and binding on the maker.

*Strawbridge*, for the appellants, contended that Slidell was not the legal pledgee of the notes, and could not recover. He attacked the case of *King* vs. *Gayoso*, 8 *Martin, N. S.*, 370, as not law, and urged the court to revise and overturn that case.

2. He insisted that Zimpel had the entire control of the speculation and so mismanaged its affairs as to exonerate M'Coy, who had confided in him.

*Bullard, J.*, delivered the opinion of the court.

EASTERN DIST.
*May*, 1840.

SLIDELL
*vs.*
M'COY'S EXECU-
TORS.

This is an appeal from a judgment of the Court of Probates, sustaining the opposition of J. Slidell to the tableau filed by the executors. The opponent claimed to be placed on the tableau as a creditor of the deceased, in virtue of two promissory notes subscribed by the testator in favor of E. Salzman, and endorsed by the latter, and which had been pledged to the opponent by Zimpel, under the following circumstances :

It appears that Slidell, Grimshaw, Claiborne, Cammack, Baldwin, Nicolet, Field and Zimpel, became interested in the purchase of several tracts of land, contiguous to each other, fronting on the Mississippi and extending to lake Pontchartrain. Their object was to lay out upon the front two towns, to be called Germantown and Dublin, and to sell out the lots upon speculation. By an act subscribed by the parties on the 8th of March, 1837, it appears that the whole cost (five hundred thousand dollars,) of which Zimpel, in whose name the title was, exclusively, owned two hundred thousand dollars, and the balance belonged to the other partners in different proportions. The fronts upon the Mississippi and upon the shore of the lake were to be laid out into squares and lots, and sold at public auction within sixty days, and the rest of the tracts within two years, the whole under the superintendence of Zimpel, who was to sign all the acts of sale to the purchasers of lots. The shares of the different partners were payable to Zimpel. That of the present appellee, amounting to fifty thousand dollars, was payable as follows : ten thousand dollars in cash, twenty-eight thousand one hundred and sixty-six dollars, by taking up Zimpel's notes for that amount, endorsed by him, which had been given to C. Fortier, in part payment of the land ; and the balance, eleven thousand eight hundred and thirty-four dollars, in his, Slidell's notes, satisfactorily endorsed, payable in one, two and three years.

By a subsequent contract, to which the appellee was not a party, Zimpel ceded all his interest, except sixty thousand dollars, to different persons, and among others to I. L. M'Coy, the testator, who became interested to the amount of twenty-five thousand dollars. In part payment of his interest, the

notes now in question were given. The parties to this second contract agreed to comply with the conditions and stipulations contained in the first agreement between the original parties. Zimple acknowledges to have received from M'Coy, in payment of his interest thus taken, five thousand dollars cash, and the note now in dispute endorsed by Salzman. These notes, together with others received from the other parties, were delivered to Zimpel.

EASTERN DIST.
*May,* 1840.

SLIDELL
*vs.*
M'COY'S EXECU-
TORS.

It appears that afterwards, Slidell and Zimpel entered into an agreement by which the former sold out to the latter all his interest, and withdrew from the speculation. It was agreed that the notes of Slidell for eleven thousand eight hundred and thirty-four dollars should be given up and cancelled. Zimpel gave his own notes, amounting to six thousand six hundred dollars, payable in one, two, three and four years, and in order to indemnify Slidell against his endorsements of Zimpel's notes for twenty-eight thousand one hundred and sixty-six dollars, he, by his agent, deposited with L. T. Caire, notary, as collateral security, "*pour par lui en compter quand et à qui de droit,*" among other notes those of M'Coy, endorsed by Salzman, given originally by M'Coy on account of his share in the concern. The notes of M'Coy were delivered afterwards by the notary in whose hands they were deposited to the present appellee, upon his producing those of Zimpel, endorsed by himself. The notary testifies that they were delivered to Slidell in compliance with the contract of pledge.

M'Coy's notes thus given in consideration of his participating in the speculation as a partner of Zimpel, who was the real owner of two-fifths and the ostensible owner of the whole property, were delivered directly to him. They do not appear to have been deposited with the notary, subject to certain conditions, as was the case with the notes given by the original partners. M'Coy became an associate, subject to all the conditions and stipulations of the first contract. Zimpel was not only interested to the amount of two-fifths, but he was the agent of the partners and subject to their control.

EASTERN DIST.
May, 1840.

SLIDELL
vs.
M'COY'S EXECU-
TORS.

In the court below, the right of the appellee to be colloca-ted on the tableau as a creditor of the testator was contested on the grounds, 1st. That he was not the owner of the notes by a legal and sufficient title ; and, 2d. That the considera-tion for which they were given had failed, the said Zimpel having violated the contract.   In this court, the grounds of defence are substantially the same.   It is contended, that although the notes were pledged to the appellee before they were due, yet he took them subject to all the equity existing originally between Zimpel and M'Coy, and that the consider--ation has totally failed.   Although there was no original privity of contract between Slidell and M'Coy, yet it appears to be conceded that the former knew the consideration for which the notes had been given.   Let that be conceded for the sake of the argument, and then let us inquire into the question of consideration.

It is not pretended that there was not originally a valid and lawful consideration for these notes.   M'Coy purchased in fact one-eighth of Zimpel's interest in the land, and he became interested to the amount of one-eighth in the profit to be made by the sale of it in the shape of town lots.   But in case of loss, can it be supposed that the parties intended it should all fall upon Zimpel? that he alone was to pay for the land, and his associates to take a share of the profits, if the speculation succeeded, but to risk nothing?   These con-tracts, on the contrary, established a limited partnership between all the parties.   The land constituting the stock had been acquired in the name of Zimpel, but belonged benefi-cially to the different partners, according to their proportional interest.   Zimpel was the agent of all concerned, and was subject to their control.   It was the design of the parties to sell a part within two months, and to close the whole sale within two years ; but there is nothing in the contract to pre-vent the parties proceeding afterwards, if any change of circumstances put it out of their power to complete the sale within sixty days.   Although, on the 10th of May, the sale was suspended by order of Zimpel, after a few lots had been sold, nothing prevented the parties interested from adapting

their course to the changed condition of affairs, and although the public appetite for extravagant speculation was cloyed, the parties might yet have come to a partition among themselves, or have converted into farms, or gardens, or grazing grounds, the lands which they at first designed for streets public squares and town lots. But will it be contended, that the parties, according to a just construction of their contract, were at liberty to stop short on the first indication of a change of times, and without taking any steps to compel their agent and partner to proceed to save something from the wreck, to throw everything upon him, compel him to pay the whole, and they retire without loss? Could any of the partners, under those circumstances, recover back from Zimpel the advance which had been made in money? It is not pretended that Zimpel was guilty of any fraud in the transaction. It is true he stopped the sale after a few lots had been sold, really or nominally because the tide had turned; but no attempt has been made to show that his conduct was injudicious or disapproved of at the time by the parties interested. On the contrary, they appear to have acquiesced in it, and to have regarded the speculation as no longer practicable.

But it has been said in argument, that Zimpel had the entire control of the speculation, in relation to the towns of Dublin and Germantown. An inspection of the original contract will convince us that this is a mistake. Article 6th provides that, " the undersigned or their legal representatives, will meet at such time and place as they will agree on hereafter, and in all deliberations relative to the present operation, or connected with it, the undersigned will be entitled to one vote for each fifty thousand dollars."

It appears to us, that M'Coy purchased on the faith of Zimpel, a certain interest in the tracts of land, and the hope of realizing a great profit. Such an uncertain hope may form, according to the code, the object of a contract of sale. It happens sometimes, says article 2426, that an uncertain hope is sold, as the fisher sells a haul of his net before he throws it; and although he should catch nothing, the sale

*Margin notes:*

EASTERN DIST.
*May,* 1840.

SLIDELL
*vs.*
M'COY'S EXECU-
TORS.

Where a person buys an *interest* or share in a speculation of lands and town lots, which soon after and suddenly decrease and fall greatly in value, from causes independent of any act or fault of the seller, he cannot resist payment of his notes or obligations, on the ground of failure of consideration.

A hope or expectation of gain or profit in some enterprize or speculation may form the object of a contract of sale.

ST. JOHN ET AL. still exists, because it was the hope that was sold, together
*vs.* with the right to have what might be caught."

ST. JOHN ET AL.        The right of a pledgee of a promissory note, generally, to
*vs.* recover, has not been questioned.    The authority of the case
SANDERSON;
COCHRAN INTER- of *King* vs. *Gayoso,* 8 *Martin, N. S.,* 370, has been strongly
VENOR. contested ; but the view which we have taken of this case
renders it unnecessary to enter into these considerations.

The judgment of the Court of Probates, is, therefore,
affirmed, with costs.