## SHANCHELL v. LEWIS AMUSEMENT CO., Inc.*

### No. 16467.

Court of Appeal of Louisiana. Orleans.

Dec. 14, 1936.

Seigfried B. Christensen, of New Orleans, for appellant.

Azzo J. Plough, of New Orleans, for appellee.

WESTERFIELD, Judge.

"Plaintiff appeals from a judgment maintaining an exception of no cause of action. The suit is brought by Charles G. Shanchell on behalf of his minor son, Joseph Shanchell, against the Lewis Amusement Company, Inc., the proprietor of a motion picture show. The sum of $105 is claimed under the following allegation:

"That defendant owns and operates the Fiorita Theatre, No. 5125 Dauphine Street, this City; that Lewis G. Plough is manager of said theatre operated by the defendant; that defendant did own and operate the before named theatre through the manager, Lewis G. Plough, on March 7, 1936, and previous to that time; that as an inducement to patrons to attend said theatre, defendant did conduct a scheme which defendant advertised and described as 'Sweepstakes Nights'; that 'Sweepstakes Nights' were conducted as follows: each patron paid an admission price to enter the theatre, and, in consideration thereof, was permitted to register his name in a registration book prepared by defendant and its agents. Further, each patron was allowed to view a motion picture performance for the same admission price. On the registration rolls, each patron was given the name of a horse to identify with his hope of an award. From the registration rolls names were prepared and placed in a turn wheel, from which wheel twenty names were drawn. A cartoon of a horse race between named horses was then run on the motion picture screen. The first three horses pictures in the cartoon who crossed the finish line in order were declared to be the first, second and third award recipients of 'Sweepstakes Nights' awards; that the awards offered by the defendant were sums of money; that the awards were made in proportionate amounts to the three patrons whose horses (corresponding to their names on the registration rolls) finished in first, second and third place; that these drawings and cartoon manipulations were periodic, being conducted on Wednesday and Saturday of each week; that as a requisite to being awarded such sums of money, the presence in the theatre of the patron whose name was drawn and whose horse finished in first, second or third place, was imperative under the rules and regulations governing the conduction of such 'Sweepstakes Nights'."

*Rehearing denied Jan. 11, 1937. Writ of certiorari refused March 1, 1937.

The petition further alleges that plaintiff's minor son, a negro, registered his name on November 5, 1935, on the registration rolls, having by this means been induced to purchase an admission ticket in the hope of being awarded a prize; that he attended the theater every Wednesday and Saturday night, on which nights drawings were held to determine the winner of "Bank Night" or "Sweepstakes Night"; (the terms are used interchangeably); that plaintiff's son on February 29, 1936, purchased a ticket of admission and entered the theater, but that on the following "Bank Night," March 1, 1936, when his son attempted to obtain a ticket for the purpose of entering the theater he was denied admission upon the ground that the theater was no longer selling tickets to negroes, "its balcony being in the process of repair to condition the same for white patrons exclusively; that on Wednesday, March 4, 1936, Joseph Shanchell again presented himself and attempted to purchase an admission ticket, but was refused; that on March 7, 1936, Joseph Shanchell presented himself at the theater and further attempted to purchase an admission ticket as he had done on previous occasions, but was refused entrance, being told that the theater was no longer selling negroes admissions or the right to be present in the theater for the "Bank Night" drawings and awards"; and "that on the night of March 7, 1936, when he was so prevented from entering the theatre, his name was drawn from the rolls prepared by the defendant, its manager, and agents; that had defendant permitted said Joseph Shanchell to be present in the theatre in keeping with the contract defendant had originally made with him, said Joseph Shanchell would have been awarded $105.00."

It will thus be seen that plaintiff's claim is based upon an alleged contract or, as his counsel terms it, a "continuing contract," which, it is claimed, was breached by the refusal to permit his son to enter the theater on the night when the drawing of the prize, which was a part of the consideration of the contract, occurred. In other words, he is suing for damages for a breach of contract, the damages being equal to the amount of the prize which his son would have won but for defendant's alleged breach of contract.

The exception of no cause of action is based upon the following grounds: First, that the alleged contract sued upon is unenforceable at law, being a gambling contract involving the conduction of a lottery scheme in violation of the laws of this state; and second, that plaintiff's petition fails to allege an obligation known to our laws, since it is not based upon a contract or quasi contract, nor is it a claim ex delicto or quasi ex delicto.

Considering the first ground of the exception, plaintiff's counsel argues that the "continuing contract" sued on is no more than the sale of a hope which is permissible under our laws. He cites articles 1887, 2450, and 2451 of the Revised Civil Code; Slidell v. McCoy's Ex'rs, 15 La. 340, 348, and Losecco v. Gregroy, 108 La. 648, 32 So. 985.

Articles 2450 and 2451 of the Revised Civil Code were not taken from the Code Napoleon, it is said, but from Las Siete Partidas, from which counsel quotes the following: "Men can make a purchase or sale of property which does not exist and is not visible. * * * Moreover, we decree that a man can purchase property which is not in any way certain. * * * We also decree that if the purchaser should say that he is willing to take the chance of the fisherman catching the first time, or catching anything during a certain hour in the day, or during the day, then although he may not catch anything, the purchaser is bound to pay when he promised." Book 5, Title 5, Law XI.

The following is quoted from Slidell v. McCoy's Ex'rs, supra: "A hope or expectation of gain or profit in some enterprize or speculation, may form the object of a contract of sale."

Pretermitting a consideration of the difficulty in comprehending what is meant by a "Continuing contract," we observe that article 1764 of the Revised Civil Code declares that "all things that are not forbidden by law, may legally become the subject of, or the motive for contracts." Assuming then, as counsel would have us do, that the purchase of a ticket of admission to defendant's theater under the circumstances narrated in his petition amounts to a contract, a part of the consideration of which was the hope of receiving a prize in a drawing to be held on that night or some subsequent night, the prize to be paid being conditioned upon the purchaser being present at the time, and that in this

instance the contract was breached by the refusal of permission to enter the theater, we have now to consider whether such a contract is reprobated by law.

Act No. 169 of 1894 denounces as a crime the running of a lottery. The act does not define a lottery, but in City of Shreveport v. Kahn, 136 La. 371, 378, 67 So. 35, 37, the following definitions which had been cited with approval in State v. Boneil, 42 La.Ann. 1110, 8 So. 298, 10 L. R.A. 60, 21 Am.St.Rep. 413, were again approved:

"A lottery 'is a distribution of prizes and blanks by chance; a game of hazard, in which small sums are ventured for the chance of obtaining a larger value, either in money or in other articles.' Worcester's Dict.

"'A scheme for the distribution of prizes by lot or chance.' Webster's Dict.

"'Any scheme whereby one, on paying money or other valuable thing to another, becomes entitled to receive from him such a return in value or nothing, as some formula of chance may determine.' Bishop, Stat.Crim. § 952."

In the Kahn Case, Kahn, the proprietor of a cigar store, operated a punchboard perforated with six hundred holes and covered with paper. In each hole a number was deposited. Any person purchasing five cents' worth of cigars or tobacco or other merchandise sold by Kahn was given the privilege of punching one of these holes and taking the number therefrom. If the number thus obtained corresponded with a number attached to twelve gold-plated pencils, the holder was given one of the pencils. In speaking of this device, the court said: "We are of opinion that the scheme of the defendant for the distribution of his pencils by chance constituted a lottery, and that he sold tickets entitling the holders to participation in the drawings."

There is, so far as we are aware, no case in our jurisprudence which holds that "Bank Nights" or "Sweepstakes Nights" are or are not lotteries, but there have been a number of such cases in other jurisdictions. Plaintiff's counsel has called our attention to States v. Eames, decided by the Supreme Court of New Hampshire, February 5, 1936, and reported in 87 N.H. 477, 183 A. 590. There the defendant who operated a motion picture theater in Little-ton, N. H., entered into a contract with the Affiliated Enterprises, Inc., under the terms of which he was licensed "to advertise his business by means of a copyrighted scheme bearing the trade-marked name of 'Bank Night.'" The modus operandi of "Bank Night" is described by the court as follows: "Each week he deposited the sum of $25 in a local bank. He also set up at the entrance to his theatre a book called a register, in which any person over 16 years of age was permitted to write his name and address opposite a number. No charge was exacted for the privilege of signing, *nor was it granted only to those who had purchased a ticket of admission to the theatre.* It was free to all, but no person was allowed to sign more than once." (Italics ours.)

Such a scheme, the New Hampshire court held, was not a lottery within the meaning of a local statute reading as follows: "No person shall make or put up a lottery, or pretended lottery, or shall dispose of, or offer or pretend to dispose of, any money or property, real or personal, by lottery, or in any such way that a hope or expectation of gain by luck or chance is made an inducement to pay for such property, or for any share or chance therein." Pub.Laws 1926, c. 384, § 1.

We fail to see, however, how plaintiff's counsel can derive any comfort from this case, since the basis of the court's judgment was a finding that participation in the award was entirely free and not conditioned upon the purchase of a ticket of admission. To quote from the opinion: "If, as the state contends in its brief, although this contention does not appear to be borne out by the agreed facts, 'the great majority of people pay for such privilege,' then it is an evasion and as such is not to be countenanced. As we understand the actual situation of this case, however, free participation is a reality. If this is so, then, regardless of the motive which induced the defendant to give such free participation, the scheme is not within the ban of the statute."

Many other courts have considered the legality of "Bank Nights" as appears from the following citations which we have taken from the opinion in the Eames Case: "Substantially similar cases have received consideration by other courts, but the results have not been uniform. In Maughs v. Porter, 157 Va. 415, 161 S.E. 242, State

v. Danz, 140 Wash. 546, 250 P. 37, 48 A. L.R. 1109, and Willis v. Young (1907) 1 K.B. 448, such schemes were held to be illegal. On the other hand, in People v. Cardas, 137 Cal.App.(Supp.) 788, 28 P. (2d) 99, Cross v. People, 18 Colo. 321, 32 P. 821, 36 Am.St.Rep. 292, Yellow-Stone Kit v. State, 88 Ala. 196, 7 So. 338, 7 L.R.A. 599, 16 Am.St.Rep. 38, and People v. Mail and Express Co. (Sp.Sess.) 179 N.Y.S. 640, such schemes were regarded as legal."

We find no difference in principle between the giving of a chance in a "Sweepstakes Night" or "Bank Night" drawing to each purchaser of admission to a moving picture show as was done in this case, and the privilege granted to a customer in a cigar store of punching a hole in a board in the hope of obtaining a number corresponding to one attached to a gold pencil, a scheme considered and denounced as a lottery in the Kahn Case. In the Kahn Case and in the instant case participation in the drawing was not free, but confined to the patrons of the theater owner in one instance and the customers of the cigar store proprietor in the other. There is, therefore, a consideration which is unlawful. As a matter of fact, the plaintiff's entire case is based upon a "continuing contract" which would imply a consideration without the express declaration to that effect in his petition. His suit is based upon a breach of a contract, whereby defendant, for a consideration, is said to have sold a chance to draw a winning horse and obtain a prize. Such a contract is clearly not enforceable because contra bones mores, being in violation of a prohibitive law relative to conducting lotteries. There is a distinction to be made between the sale of a hope as permitted by article 2451 of the Revised Civil Code and the sale of a lottery ticket, but, were it otherwise, and the codal article in conflict with Act No. 169 of 1894 relative to the operation of a lottery, the later enactment, the act of 1894, would prevail.

In our opinion, the first ground urged in support of the exception of no cause of action is perfectly sound, and we therefore are of the view that the exception was properly maintained.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.