LEO SIMMONS, Plaintiff, *v.* RANDFORCE AMUSEMENT CORPORATION, Defendant.

Municipal Court of New York, Borough of Brooklyn, Second District, January 27, 1937.

*Fred C. Moritt*, for the plaintiff.

*John M. Keating* [*Milton Brause* of counsel], for the defendant.

WECHT, J.    Plaintiff seeks to recover from the defendant the sum of $250 by reason of being the holder of the winning number drawn by the defendant on one of its " bank nights." The gravamen of the complaint is that the defendant operated what is commonly known as " bank night;" the defendant advertised and requested its patrons and others to sign their names and addresses in a certain book furnished by the defendant. Opposite each name there was a number. The defendant openly advertised and represented to the public that public drawings of said numbers would be had and that the holder of the winning number would receive the sum of $250 as a prize. The plaintiff duly signed his name in the book of the defendant next to which was a number and that his number was called by the judges appointed by the defendant to pick the winner. The plaintiff was present at such drawing, duly presented

himself, and the defendant refused to pay him the prize money. Plaintiff further alleges that he duly performed all conditions on his part to be performed.

The defendant now moves to dismiss the complaint for failure to state a cause of action, attacking it on two grounds: *First*, that the complaint sets forth no consideration for the promise of the defendant to pay the prize money; and *second*, that if a consideration can be spelled out, the contract is illegal and void, as the payment of any consideration would reduce the entire scheme to a lottery, which is against public policy and illegal in our State.

As far as the second contention is concerned, the Court of Appeals has already ruled on " bank nights " similar to the one operated by this defendant and declared that such a scheme is not a lottery and is, therefore, not illegal. (*People* v. *Shafer*, 160 Misc. 174; affd., 273 N. Y. 475.) This court, of course, is bound by this decision, and, therefore, the second contention of the defendant merits no further discussion.

The first point, however, raised by the defendant presents a more difficult and more novel problem. Neither side has cited any apposite cases pro or con, nor has the court in its own research been able to find any authority precisely in point.

True it is that in the *Shafer Case* (*supra*) and in the case of *People* v. *Mail & Express Co.* (179 N. Y. Supp. 640; affd., 231 N. Y. 586), some dicta will be found in the opinions rendered that the so-called " bank night " promises of prizes were void because of lack of consideration. However, the rule promulgated in a criminal prosecution is unlike that in a civil suit. Both of the above cases construed a criminal statute. Criminal statutes must be strictly construed. The rights of a prize winner were in no wise discussed or involved, and any reference to the invalidity of the contract by reason of inadequate consideration must be assumed to be *obiter dictum*.

" Legal consideration " for an enforcible promise of another need not necessarily have a monetary value or even be tangible property capable of manual delivery to the promisor.

Corpus Juris (Vol. 13, p. 324) discusses the question of consideration in the following language: " As a valid consideration may be the doing or the promising to do something not illegal, at the request of the promisor, which the promisee is not already under a legal obligation to do, * * * it is clear that a consideration need not be a thing of pecuniary value or even reducible to a money value."

Our courts have extended and enlarged the concept of consideration as new cases were brought to their attention. The very early

decisions that enforced the recovery of a reward offered by the loser of an article to the finder were based on the rationale that "the consideration which supports the promise of a reward is not benefit to the promisor, it is rather the trouble, inconvenience or detriment to the promisee by reason of the fact that upon the faith of the promise he has done some act. Hence, the performance of the terms of an offer constitute a good and sufficient consideration for the contract upon which to base the recovery by claimant." (54 C. J. p. 785.) This seems to be irrefragable logic and sound law. It comports with the sense of justice.

The case of *Hamer* v. *Sidway* (124 N. Y. 538, 545) further extended the concept of legal consideration by holding that a promise made by one to abstain from drinking liquor, using tobacco, and engaging in gambling was sufficient consideration to sustain a promise for the payment of a sum of money by another. The court, in that case, cites with approval from Anson's Principles of Contracts, 63, that "Courts 'will not ask whether the thing which forms the consideration does in fact benefit the promisee or a third party, or is of any substantial value to anyone. It is enough that something is promised, done, foreborne or suffered by the party to whom the promise is made as consideration for the promise made to him,'" and further quoting from Parsons on Contracts, 444: "'In general, a waiver of any legal right, at the request of another party, is a sufficient consideration for a promise;'" and again, quoting from Pollock on Contracts, "'consideration means not so much that one party is profiting as that the other abandons some legal right in the present or limits his legal freedom of action in the future as an inducement for the promise of the first.'"

In the very learned and outstanding opinion on the problem of legal consideration, former Chief Judge CARDOZO of the Court of Appeals, in the case of *Alleghany College* v. *National Chautauqua County Bank* (246 N. Y. 369, 373), says: "there has grown up of recent days a doctrine that a substitute for consideration or an exception to its ordinary requirements can be found in what is styled 'a promissory estoppel' * * * Very likely, conceptions of public policy have shaped, more or less subconsciously, the rulings thus made. Judges have been affected by the thought that 'defences of that character' are 'breaches of faith toward the public, and especially toward those engaged in the same enterprise, and an unwarrantable disappointment of the reasonable expectations of those interested.'"

The underlying idea here is the sense of decency and ordinary justice as understood by the layman. The clear attempt here is

to approximate more closely the reasoned decisions of the appellate courts with the ordinary ethical concepts.

Applying the doctrines above outlined to the case at bar, it is clear that the acts of the plaintiff in signing the register of the defendant and in attending the night of the draw is something which the plaintiff was not legally bound to do and was, therefore, adequate consideration to enforce the promise of the defendant to award the prize money to him.

Looking at the question from a broader point of view, the same result can be arrived at on the theory of " promissory estoppel " discussed by Judge CARDOZO.

It is a matter of common knowledge that theatres all over the city and State conduct these " bank nights," as well as other motley guessing contests, innocuous in themselves, and yet offering valuable prizes to the successful contestants. Thousands of our citizens enter into these games in the spirit in which they are offered, with full confidence in the honesty of the draw and the responsibility and *bona fides* of the sponsors. To hold that a winner cannot enforce payment would be placing approval upon cozenage and duplicity.

A civil court is not a Victorian tribunal and should not scrutinize these pastimes with an eye to branding them illegal or vicious. The Court of Appeals apparently took this attitude in deciding the *Shafer Case (supra)*.

The public has a right to trust implicitly these semi-public institutions. It would be an unwarranted breach of faith on the part of a theatre to renege on its promise to award the advertised prize. I believe that the theatres themselves, including this defendant, would be harmed by a contrary decision. The ultimate benefit which the theatre owner receives by reason of increased patronage is ample to reward the theatre and pay for the prizes donated. It is, indeed, with ill grace that this defendant has even raised the question of consideration.

To uphold the theory of defendant's counsel would brand this defendant either as a criminal engaged in an illegal lottery or as a cheat. Neither horn of this dilemma is too comfortable to sit on.

The motion to dismiss the complaint must be denied.