This suit was brought by William J. Doskey on behalf of his minor daughter, Betty Doskey, against the owner and operator of the National Theatre in New Orleans. The sum of $115 is claimed upon the allegations that the National Theatre, as an incident to its operation, on each Friday night, conducts what is known as "Dividend Night", a system for the distribution of cash awards or "Dividends" to any person, whose registration stub is drawn from a wheel or drum; that on the night of Friday, May 15, 1942, the announced cash award was $115; that on said night a registration stub bearing the name and address of his minor daughter, Betty Doskey, was drawn from the drum; that plaintiff's said minor daughter was present at such drawing, duly presented herself, and that the management of the theatre refused to pay her the said award of $115, assigning as a reason therefor, that his said daughter did not present to the committee in charge of the drawing an original or duplicate registration card bearing the same number as the stub drawn from the drum. Plaintiff further alleges that his minor daughter had lost her original registration card and that she had applied for and had had issued to her a duplicate card. *Page 277 
The defendant answered in which it denied liability on the ground that, on the occasion of the drawing in question, plaintiff's minor daughter had not fulfilled all of the requirements stipulated in the rules and regulations governing these awards, in that she failed to produce an original or duplicate registration card corresponding in number to the registration stub drawn from the wheel. Defendant further avers that upon the failure of plaintiff's minor daughter to have presented a registration card bearing a number corresponding to the number appearing on the winning stub so drawn, the committee in charge of the award refused to pay her the same, and thereupon another number was drawn from the wheel, and the award of $115 was paid, by the defendant, to the person holding said corresponding winning number. Defendant denied that Betty Doskey had applied for a duplicate registration card corresponding to the stub bearing her name and which was originally drawn from the wheel, and averred that, in violation of the rule of said contest, she registered a second time under a different number, which second registration was, under said rules, null and void.
Judgment was rendered in favor of plaintiff and defendant has appealed.
During the argument before us on the merits of the case, we directed the attention of opposing counsel to the right of plaintiff to seek recovery under the circumstances disclosed in this instance, on the theory that, assuming as true, the conditions required and procedure observed in the award made by the defendant to its patrons, such a contract is not enforceable, being in violation of a prohibitive law relative to conducting lotteries. Counsel for defendant, however, called our attention to the fact that the defendant had not pleaded, as a matter of defense, the legality, vel non, of the awards made weekly by the defendant to its patrons, nor was that issue being presently urged before us, and that defendant desired to rest its defense exclusively on the merits of the controversy.
Counsel for plaintiff concedes, as he necessarily must, that even in the absence of a formal plea on the part of the defendant raising the issue of the legality, vel non, of the contractual right sued on, we possess the inherent right and power, and it is our duty, to take notice of the nature of the contract here involved, and thus determine at the outset whether it is a gambling contract reprobated by law. Obviously, we are obliged to determine for ourselves, from the evidence adduced, whether the status of the contract falls within or without our prohibitory laws in order to determine whether the question is justiciable.
The record shows that the defendant advertised and operated what is commonly known as "Dividend Night", which was conducted as follows: Each patron paying an admission price to enter the theatre was, in consideration thereof, permitted to register his or her name and address in a registration book furnished by the defendant and its agents. After thus registering, each patron was given a card bearing a number and his or her name and address, and a stub bearing the same number, name and address would be retained by the defendant and dropped into a wheel or drum from which the weekly drawing was made. The defendant openly advertised and represented to the public the date of these weekly drawings and that the holder of the winning number so drawn, upon presentation of the card originally issued to him, or a duplicate thereof, containing the corresponding number, name and address would receive the sum of money so advertised to be awarded. It is further shown that under the rules and regulations governing the same, as a requisite to being awarded the money, the patron, whose number and name was drawn, had to be present in the theatre.
It is shown that the plaintiff's minor daughter duly registered her name in the book of the defendant and was given a card entitling her to participate in the drawing; that on the night of the drawing in question she attended the theatre as a patron, and though it is claimed by her that she held the corresponding winning ticket and was thus entitled to be paid the award, defendant refused to do so.
Act No. 169 of 1894 denounces as a crime the running of a lottery. Lotteries are not defined in the act. In the case of State v. Boneil, 42 La.Ann. 1110, 8 So. 298, 300, 10 L.R.A. 60, 21 Am.St.Rep. 413, the Court said:
"A lottery is `a distribution of prizes and blanks by chance, — a game of hazard in which small sums are ventured for the chance of obtaining a larger value either *Page 278 
in money or in other articles.' Worcest. Dict.
"`A scheme for the distribution of prizes by lot or chance.' Webst. Dict.
"`Any scheme whereby one, on paying money or other valuable thing to another, becomes entitled to receive from him such a return in value, or nothing, as some formula of chance may determine.' Bish. St.Cr. § 952."
In the case of City of Shreveport v. Kahn, 136 La. 371, 67 So. 35, the proprietor of a cigar store operated a punch board perforated with 600 holes and covered with paper. In each hole a number was deposited. Any one purchasing five cents worth of cigars or other merchandise at the cigar store had the privilege of punching one of these holes and taking the number therefrom. If such number corresponded with a number attached to the prizes on said board, the purchaser received the same. The Supreme Court concluded that this scheme for distribution of prizes by chance constituted a lottery, and as such a violation of the statute.
We recently had occasion to inquire into and determine the legality of a scheme, similar, in all respects, to that here presented. In the case of Shanchell v. Lewis Amusement Company, La.App., 171 So. 426, 429, the owner of a theatre, as an inducement to its patrons, conducted a scheme which defendant advertised and described as "Sweepstake Nights"; each patron paying an admission price to enter the theatre was permitted to register his name in a registration book prepared by the defendant; on this registration roll each patron was given the name of a horse to identify with his hope of an award. Names were prepared from the registration rolls and placed in a turn wheel, from which twenty names were drawn. A cartoon of a horse race between named horses was then run on the motion picture screen. The first three horses pictured in the cartoon who crossed the finish line in order, were declared to be the first, second and third award recipients of "Sweepstake Nights" awards, the awards being sums of money, and each award made being in proportionate amounts to the three patrons whose horses (corresponding to their names on the registration rolls) finished in first, second and third place. These drawings were conducted twice each week and as a requisite to being awarded such sums of money, the presence in the theatre of the patron whose name was drawn, was mandatory.
We drew a similarity in the principle announced in the Kahn case to the scheme employed in the Shanchell case, supra, holding that the consideration for participation in the drawing was unlawful, and that such a contract was "clearly not enforceable because contra bones mores, being in violation of a prohibitive law relative to conducting lotteries".
The Lewis Amusement case cannot be differentiated from the instant case, either as to the modus operandi employed, the nature of the contract, or the principle of law involved. Of necessity, we conclude that the contract in the instant case, the breach of which serves as the basis of plaintiff's entire case, is one reprobated by law and one which cannot receive our sanction or approval. Were we to disregard the legal status of this contract and inquire into the rights of the parties flowing therefrom, we would be giving recognition to, and placing our approval upon, that which our law and public policy unmistakably denounces.
Plaintiff has cited and relies on the case of Simmons v. Randforce Amusement Corporation, 162 Misc. 491, 293 N.Y.S. 745. There a patron of a theatre, under circumstances very similar to those here involved, sued to recover payment of the award. The defendant sought dismissal of the suit on the ground that the contract was illegal and void, as the payment of the consideration reduced the entire scheme to a lottery, which was against public policy and illegal. The Court there allowed plaintiff to recover, and in the course of the opinion commented upon the fact that a civil court is not a Victorian Tribunal or called upon to scrutinize these innocuous pasttimes with an eye to branding them illegal or vicious.
We fail to see, however, how plaintiff's counsel can derive any comfort from this case for the reason that the scheme or "Bank Night" there operated by the defendant was held and declared by the Court not to be a lottery, and therefore legal, hence permitting recovery by the plaintiff irrespective of the technicalities of want of consideration pleaded as an alternative defense. However, schemes, such as that employed by the defendant in the case before us, are denounced by our laws and asserted *Page 279 
rights flowing therefrom cannot be considered by Courts of Justice.
For the reasons assigned it is ordered, adjudged and decreed that the judgment appealed from be and it is hereby reversed, and that there now be judgment dismissing plaintiff's suit at his cost.
Reversed.